**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **RANDOLPH MORGAN,** <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF VALDOSTA, GEORGIA**, *et al.*, <br><br> Defendants. | Case No. 7:11-cv-177 (HL) |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 13). For the reasons stated below, the motion is granted.

I.  **FACTUAL BACKGROUND**

On November 29, 2008, Plaintiff Randolph Morgan was a patron at the AMVETS nightclub in Valdosta, Georgia. (Defendants' Statement of Material Facts ("DSMF"), Doc. 13-1, ¶ 1.)[1] At some point that evening, Plaintiff walked outside of the nightclub. (DSMF ¶ 2.) Defendants Mark Burkhart and Travis Kiser, both off-duty, uniformed Valdosta police officers, were working outside the nightclub as security officers. (DSMF ¶ 6.) Plaintiff attempted to re-enter the nightclub and was denied re-entry by Defendants Burkhart and Kiser. The parties dispute exactly what transpired. Defendants allege that Plaintiff refused to go to

---

[1] All citations to the Defendants' Statement of Material Facts refer to those statements that have been admitted by Plaintiff. *See* Doc. 19.

the end of the line to go through security and gain access to re-enter the nightclub. (Criminal Transcript,[2] Direct Examination of Burkhart, Doc. 13-4, p. 23.) Defendants further allege that Plaintiff repeatedly refused to comply with security requests, and Burkhart eventually asked him to leave the premises. Id. On the other hand, Plaintiff contends that there was no line outside of the club and he was told he could not re-enter for no reason. (Deposition of Randolph Morgan, Doc. 16, p. 73.) Plaintiff further contends that he was threatened with arrest if he did not leave the premises. Id. The parties agree that during the exchange outside of the club, Plaintiff asked to re-enter the nightclub to find his nephew who arrived at the club with him (DSMF ¶ 12) and the request was denied (DSMF ¶ 13).

At some point after the altercation described above, Plaintiff contacted the Lowndes County Emergency 911 Center and requested that a Valdosta police officer come to the scene because he was unhappy about being asked to leave the nightclub. (DSMF ¶ 18.) Sgt. Thomas Wheeler of the Valdosta Police Department responded to Plaintiff's location and questioned Plaintiff and Officers Burkhart and Kiser. (DSMF ¶ 19.) After interviewing all parties, Sgt. Wheeler told

---

[2] Throughout this order, the Court cites to the Criminal Transcript, which references the transcript from the underlying criminal proceeding against Plaintiff for alleged violations of O.C.G.A. § 16-10-24 and O.C.G.A. § 16-11-39.2. The transcript was submitted as an exhibit by Defendants along with their Motion for Summary Judgment. Mr. King, Plaintiff's current counsel, represented Plaintiff in the underlying criminal action and he had the opportunity to cross-examine all witnesses testifying in the trial. There have been no objections to the use of the transcript as binding testimony from the witnesses, and thus, the Court chooses to use the transcript for purposes of the current proceeding.

2

Plaintiff he would have to leave the property as originally instructed. (DSMF ¶ 20.) Wheeler then left the scene. Plaintiff did not leave the premises, and instead he dialed the Lowndes County Emergency 911 Center again and requested another supervisor come to his location. (DSMF ¶ 21.) Lt. Raymond Conner of the Valdosta Police Department arrived and spoke with Plaintiff. (DSMF ¶ 22.) After surveying the scene, Lt. Connor informed Plaintiff that he should leave the premises. (DSMF ¶ 25.) Plaintiff, still unhappy with the situation, continued to call 911. (DSMF ¶ 26.)

Plaintiff called 911 a total of sixteen times on the evening of November 29, 2008.  A synopsis of the calls is below.

> Call 1: Plaintiff asks the 911 operator for the Chief of Police and informs the operator that the Chief needs to respond to his location because he is not allowed back into the nightclub. He is informed that an officer is on his way.
>
> Call 2: Plaintiff informs the 911 operator that the officer who responded to the scene would not allow him back in the club. He requests that "whoever is in charge" come to the scene.
>
> Call 3: Plaintiff appears to call 911 and hang up.[3]
>
> Call 4: Plaintiff appears to call 911 and hang up.
>
> Call 5: The 911 Center redials Plaintiff in response to the two hang ups. Plaintiff informs the 911 operator of his location and he is told to stay put so that the responding officer can locate him.

---

[3] The parties debate whether Plaintiff intentionally dialed 911 and hung up, whether he dialed 911 and lost service, or whether he unintentionally dialed 911. It is not necessary to decide which of these three options is factually correct. It is sufficient to note that his phone number called 911 and the line went dead when the 911 operator answered the phone.

3

Call 6: Plaintiff appears to call 911 and hang up.

Call 7: Plaintiff tells the 911 operator that the responding officer will not let him drive his car home. He tells the operator that he is not allowed back in the club to get the person with whom he arrived at the club and he requests a new officer to respond.

Call 8: Plaintiff calls 911 to request another supervisor. He states that the first responding officer was being "rude." The 911 operator, who recognizes Plaintiff's voice and calls him by name even though he has not identified himself, informs Plaintiff that she has put in the request for a different supervisor to come to his location.

Call 9: Plaintiff tells the 911 operator that he has not yet seen another officer at the scene. He reiterates that he wants to get his nephew from the club and leave. He complains about the officer's behavior and his "attitude" and says that he is recording everything. The 911 operator informs Plaintiff that Lt. Connor has been informed of the situation and will call him.

Call 10: Plaintiff again complains that he has not yet seen another supervising officer, and he restates his complaint that the original officer was rude. The 911 operator tells Plaintiff that Lt. Connor will be calling him.

Call 11: Plaintiff calls again and restates that he has not seen the second responding officer. The 911 operator asks "Is this Mr. Morgan?" to which he answers in the affirmative. The 911 operator asks him for his location. He continues to complain that he does not know what to do and he needs another supervisor. At the end of the call, Plaintiff states that an officer has just pulled up.

Call 12: Plaintiff calls 911 again asking for another supervisor. He claims that he "passed the test" but the officer will not let him leave. He says he wants a supervisor who "knows what they are doing." He complains that he "is not getting any justice" and he is tired of being harassed.

Call 13: Plaintiff appears to call 911 and hang up.

Call 14: Plaintiff appears to call 911 and hang up.

4

> Call 15: Plaintiff informs the 911 operator that the responding officer has given him his rights, but he needs to get to his car. He states that the officer informed him not to call 911 again, but he called any way because he cannot get to his car. Plaintiff complains that he has not been given a breathalyzer test.
>
> Call 16: Plaintiff complains that he needs to take a breathalyzer test and he states that if he is over the legal limit, he will not drive. The 911 operator lets him know that she is unable to help with this request, and he informs her that he will go ask the officer about the breathalyzer test.

(Defendants' Exhibit B, Audio Recording of 911 calls, Manually Filed.)

The Court assumes the officer to whom Plaintiff refers in Call 11 was Sgt. Wheeler, who returned to the nightclub for the second time to respond to Plaintiff's repeated 911 calls. The interaction between Sgt. Wheeler and Plaintiff was recorded on the dashboard-mounted camera in his patrol car. (Defendants' Exhibit D, Video Recording from Dashboard Camera, Manually Filed.) The video of the interaction between Sgt. Wheeler and Plaintiff begins at 12:30 a.m. and lasts until 1:00 a.m. In the first few minutes of the video, Sgt. Wheeler reads Plaintiff the statute relating to unlawful conduct during a 911 call, and he informs Plaintiff that if he continues to call 911, he will be arrested for violating that code section. (Defendants' Exhibit D, Disc 1.) Sgt. Wheeler also tells Plaintiff that if he has a complaint about a responding officer, the proper procedure for filing the complaint is to go to a precinct on Monday to report the problem. Id. The video also shows Plaintiff asking Sgt. Wheeler if Plaintiff can drive his car, to which Sgt. Wheeler responds that he cannot drive if he is drunk. Plaintiff states that he is not

5

drunk. Sgt. Wheeler informs Plaintiff that it would be best if he called a cab. (Defendants' Exhibit D, Disc 1.)

After this initial interaction, Sgt. Wheeler gets back into his car. The dashboard-mounted camera is still running, though there is no audio, and through the front windshield, Plaintiff is still visible. He appears to be talking on his cell phone, and the Court assumes based on the transcript of the 911 calls, that he is calling 911 again. The dashboard-mounted camera shows that at 12:41 a.m., Sgt. Wheeler emerges from his vehicle and approaches Plaintiff with a breathalyzer test. (Defendants' Exhibit D, Disc 3.) Plaintiff blew a 0.146, almost twice the legal limit to drive. Id.

The video shows that Sgt. Wheeler then arrests Plaintiff. (Defendants' Exhibit D, Disc 3; see also DSMF ¶ 38.) Plaintiff was taken to the Lowndes County Jail during the early morning hours of November 30, 2012 and he was released on bail the same day. (DSMF ¶ 39.) Plaintiff was arraigned for the misdemeanor offense of violating O.C.G.A. § 16-10-24 (Obstruction of Officer) on February 2, 2009. (DSMF ¶ 41.) However, Plaintiff missed his arraignment and was arrested pursuant to a bench warrant issued by Lowndes County State Court Judge John K. Edward, Jr. (DSMF ¶ 42.)

Plaintiff was ultimately tried before a jury on December 21, 2009 for violating O.C.G.A. § 16-10-24 (Obstruction of Officer) and O.C.G.A. § 16-11-39.2 (Unlawful Conduct during 911 Call). (DSMF ¶ 44.) Plaintiff's counsel moved for directed verdict at the end of the Government's case, which was denied by Judge

6

Edwards. (DSMF ¶ 45, 46; *see also* Criminal Transcript, Doc. 13-4, p. 118-22.) At the conclusion of the trial, the jury found Plaintiff not guilty on both charges. (DSMF ¶ 47.)

Plaintiff filed the present action on December 21, 2011. His claims against Defendants are for malicious prosecution under § 1983 and state law, and for negligent hiring, retention, and training in violation of § 1983. Plaintiff's claims are discussed below.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

III. **DISCUSSION**

The three claims brought by Plaintiff are addressed below.

   a. **Count II: Negligent Hiring, Training, and Retention under § 1983**

In Count II, Plaintiff alleges that Defendants Wheeler, Kiser, Burkhart, and the City of Valdosta maintained an inadequate system of reviewing the use of force by Valdosta police officers. (Complaint, Doc. 1, p. 9-10.) In their Motion for Summary Judgment, Defendants argue that this claim was filed outside of the

8

statute of limitations and should be dismissed. The Court agrees with Defendants.

There is no specified federal statute of limitations for § 1983 claims. Without any controlling federal statute of limitations, federal courts look to the underlying state statute of limitations to determine when a claim must be brought. Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011) (stating that "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."). In Georgia, the statute of limitations for injuries to the person is two years from the date the action accrues. *See* O.C.G.A. § 9-3-33. Under Georgia law, the statute of limitations for negligent hiring accrues on the date of the incident. Valades v. Uslu, 301 Ga. App. 885, 888, 689 S.E.2d 338, 341 (2010). Thus, the statute of limitations in this case for Plaintiff's negligent training, hiring, and retention claim began to run on November 29, 2008,[4] the date of the initial incident at the AMVETS nightclub, and the limitations period expired on November 29, 2010, over a year before Plaintiff filed the present case. Plaintiff filed his claim for negligent training under § 1983 outside of the appropriate statute of limitations, and thus, the claim is dismissed as untimely.[5]

---

[4] The date the claim began to run could potentially be November 30, 2009, since Plaintiff was arrested in the early morning hours on the 30th. However, whether the date is November 29 or 30, his claim is still untimely.

[5] Plaintiff's claims for malicious prosecution are not barred by the statute of limitations. Georgia law allows for malicious prosecution claims to be filed "within two years after the termination of the underlying prosecution in plaintiff's favor."

### b. **Counts I & III: Malicious prosecution under § 1983 and state law**

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010). To establish a malicious prosecution claim under § 1983, a plaintiff must prove both a violation of his or her Fourth Amendment right to be free from unreasonable seizures and the elements of the common law tort of malicious prosecution. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). Because the elements of the common law tort are part of the *prima facie* case for a federal malicious prosecution claim, if a plaintiff cannot prove malicious prosecution under state law, then the plaintiff would, by default, also be unable to prove a federal claim.

In Georgia, the constituent elements of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. Id. at 882 (citing Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998)). In this case, the first, third, and fourth elements are not disputed. However, the second element is in question.

---

Brown v. Lewis, 361 Fed. App'x. 51, 55 (11th Cir. 2010) (quoting Waters v. Walton, 225 Ga. App. 119, 120, 483 S.E.2d 133, 134 (1997)). The resolution of the underlying criminal action in this case took place on December 21, 2009, when a jury found Plaintiff not guilty of the underlying criminal charges. The present case was filed on December 21, 2011, exactly two years after the resolution of the underlying criminal case. Thus, the malicious prosecution claims are not barred by the statute of limitations.

10

To demonstrate the existence of probable cause, an officer need not have actual probable cause, but only "arguable" probable cause. Grider, 618 F.3d at 1257. Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (citing Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)).The standard is an objective standard, and does not consider the officer's subjective point of view. Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010). Whether there was probable cause for the two charges brought against Plaintiff is discussed below.

i. **Probable Cause: Unlawful Conduct during 911 Call**

Plaintiff was charged with violating O.C.G.A. § 16-11-39.2, which prohibits unlawful conduct during a 911 call. Under § 16-11-39.2(b), a person commits the offense of unlawful conduct during a 911 telephone call if he or she:

> (1) without provocation, uses obscene, vulgar, or profane language with the intent to intimidate or harass a 911 communications officer;
>
> (2) calls or otherwise contacts 911, whether or not conversation ensues, for the purpose of annoying, harassing, or molesting a 911 communications officer or for the purpose of interfering with or disrupting emergency telephone service;
>
> (3) calls or otherwise contacts 911 and fails to hang up or disengage the connection for the intended purpose of interfering with or disrupting emergency service;
>
> (4) calls or otherwise contacts 911 with the intention to harass a communications officer; or
>
> (5) calls or otherwise contacts 911 and makes a false report.

11

"Harass" is defined in the statute as

> to knowingly and willingly engage in any conduct directed toward a communications officer that is likely to impede or interfere with such communications officer's duties, that threatens such communication officer or any member of his or her family, or that places any member of the public served or to be served by 911 service in danger of injury or delayed assistance.

O.C.G.A. § 16-11-39.2(a)(3). "False report" is defined as "the fabrication of an incident or crime or of material information relating to an incident or crime which the person making the report knows to be false at the time of making the report." O.C.G.A. § 16-11-39.2(a)(2).

In this case, Defendants argue that probable cause is established for the 911 charge against Plaintiff based on the trial court judge's denial of a motion for directed verdict of acquittal during Plaintiff's underlying criminal trial. Defendants rely on Monroe v. Sigler, 256 Ga. 759, 353 S.E.2d 23 (1987), in which a plaintiff filed a claim for malicious prosecution against defendants following his arrest for simple battery and subsequent not guilty jury verdict in an underlying criminal case. Id. at 759, 353 S.E.2d at 760. In that case, the Supreme Court of Georgia determined that the denial of the motion for directed verdict in the underlying criminal prosecution was sufficient to "constitute a binding determination of the existence of probable cause" for purposes of the plaintiff's malicious prosecution claim. Id. at 761, 353 S.E.2d at 25; *see also* Poole v. Bell, 5:09-cv-233 (MTT), 2012 WL 1074291 at *7 (M.D. Ga. Mar. 29, 2012) (Treadwell, J.). Based on this precedent, Defendants argue that the denial of directed verdict in this case

12

demands a finding of probable cause. In response, Plaintiff argues that the standard applied for probable cause in a criminal proceeding is vastly different from the standard for probable cause that is appropriate in this case, and therefore, the denial of directed verdict should not serve as the basis for probable cause.

The Court finds Plaintiff's arguments unconvincing. In <u>Monroe</u>, the court addressed the standards applied in civil and criminal cases, finding the standard that was applicable to a directed verdict motion in a criminal case was more stringent than the standard used for probable cause in a civil case. The court stated that the "quantum of evidence" considered by a trial judge in deciding a motion for directed verdict is "substantially greater than mere probable cause." <u>Id.</u> at 761, 353 S.E.2d at 25. The court further explained:

> When the trial judge, having heard all of the state's evidence, considers a motion on behalf of an accused (the accused being present and given an opportunity to be heard in support of the motion); and when the trial judge rules that the evidence is sufficient *as a matter of law* to support a conviction (that is, is sufficient to enable a rational trier of fact to find each and every element of the guilt of the accused beyond a reasonable doubt), we can see no reason why such a holding – unreversed and in the absence of fraud or corruption – should not suffice as to the existence of probable cause.

<u>Id.</u> at 761, 353 S.E.2d at 25 (emphasis in original). In essence, because a judge in a criminal case considers the evidence under the framework of determining whether it is sufficient to support a finding of guilt beyond a reasonable doubt, a

higher standard than probable cause, that judge's denial of directed verdict is sufficient to establish probable cause in a civil case.

In this case, Judge John K. Edward, Jr., the Lowndes County state court judge who presided over Plaintiff's underlying criminal proceeding, explicitly denied Plaintiff's motion for directed verdict on the 911 charge. The judge stated that "[s]ome of the information by the defendant during the 911 call could be determined by the jury, although the court is not making that determination as it is not the court's responsibility, could be determined to be material information of an untrue nature", in violation of O.C.G.A. § 16-11-39.2(b)(5). (Criminal Transcript, Doc. 13-4, p. 120-21.) The judge went on to say that "this could largely be seen as a credibility issue about who the jury chooses to believe and what information they choose to believe and what definition they choose to apply to false report…" (Criminal Transcript, Doc. 13-4, p. 123.)

This Court finds that Judge Edward's explicit denial of directed verdict in the criminal proceeding is sufficient to establish probable cause on the charge of unlawful conduct during a 911 call. Thus, Plaintiff cannot establish a *prima facie* case for malicious prosecution as to this charge.

### ii. **Probable Cause: Obstruction of Officers**

Plaintiff was also charged with a violation of O.C.G.A. § 16-10-24, which prohibits obstruction of officers. The statute states "[e]xcept as otherwise

provided in subsection (b) of this Code section,[6] a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a).

Plaintiff's motion for directed verdict of acquittal during his underlying criminal trial included a request for a directed verdict on the obstruction charge. Plaintiff's counsel stated during the criminal trial that he made a motion for directed verdict of acquittal "as to both charges." (Criminal Transcript, Doc. 13-4, p. 118.) Plaintiff's counsel argued the 911 charge and then argued that "with regards to the obstruction charge there is even less [evidence]." (Criminal Transcript, Doc. 13-4, p. 120.) The Government in the underlying criminal case responded to the motion for directed verdict and claimed that there was sufficient evidence to support a conviction. Specifically, the Government argued that the charge was relevant to Sgt. Tom Wheeler's instruction to Plaintiff not to call 911, which Plaintiff chose to ignore. (Criminal Transcript, Doc. 13-4, p. 122.)

In ruling on the motion for directed verdict, Judge Edwards did not explicitly address the obstruction charge when he denied the motion. By inference, it is apparent that the motion was denied as to both the 911 charge and the obstruction charge since the trial proceeded on both counts. Thus, the Court believes that Judge Edward did make a finding that there was sufficient evidence to convict Plaintiff of both charges beyond a reasonable doubt, which is sufficient

---

[6] O.C.G.A. § 16-10-24(b) addresses obstruction by virtue of violence used against law enforcement officers and is not at issue in this case.

to establish probable cause. However, because the denial of the motion as to the obstruction charge was not explicit in the transcript, in an excess of caution, the Court finds it prudent to go through the facts relevant to Plaintiff's arrest. As demonstrated below, the facts support a finding of probable cause to arrest Plaintiff for a violation of § 16-10-24.

The record establishes that on November 29, 2008, Plaintiff did not follow Sgt. Tom Wheeler's instructions, which constitutes obstruction. The first time that Sgt. Wheeler came to the AMVETS nightclub in response to Plaintiff's 911 call, Wheeler determined that Plaintiff had been drinking and Wheeler believed him to be intoxicated. (Criminal Transcript, Doc. 13-4, p. 81-82.) Wheeler informed Plaintiff that he should not continue to call 911 because there was no emergency situation. Id. Wheeler further informed Plaintiff that he should leave the premises, and Wheeler warned Plaintiff that he should not drive his car if he was intoxicated. Id. Wheeler left the scene after giving these instructions to Plaintiff. (Criminal Transcript, Doc. 13-4, p. 83.) Wheeler came back to the AMVETS nightclub a second time in response to Plaintiff's continued and repeated calls to 911. Id. When Wheeler arrived, he read to Plaintiff the statute prohibiting interference with 911 communications. (Criminal Transcript, Doc. 13-4, p. 84; *see also* Defendants' Exhibit D, Disc 3.) Wheeler let Plaintiff know that if he continued to call 911, he would be arrested. Id. When Wheeler got back into his vehicle to leave after telling Plaintiff not to call 911 anymore, he heard from his dispatch supervisor that Plaintiff was continuing to call 911 and demand a breathalyzer

test. (Criminal Transcript, Doc. 13-4, p. 84.) At this point, Wheeler got out of his car and gave Plaintiff the breathalyzer test that he was demanding. Id. The test revealed that Plaintiff's blood alcohol content was .146%, almost twice the legal limit for driving. (DSMF ¶ 37.) After administering the test, Wheeler arrested Plaintiff for obstruction of an officer. (Criminal Transcript, Doc. 13-4, p. 85.) Wheeler explained that he made the decision to arrest Plaintiff for obstruction because

> [i]nitially [he was] being very persistent not to leave, the extensive coercion of getting him to leave and convincing him to leave and then having to return for the same complaint of him constantly and persistently calling 911. It took me away from my primary responsibility of a supervisor for my subordinate officers, going on various calls throughout the city on this particular night.

(Criminal Transcript, Doc. 13-4, p. 85.)

Based on this testimony, as well as a review of the video recording from Wheeler's car (Defendants' Exhibit D) and the audio recording of Plaintiff's 911 calls (Defendants' Exhibit B), the Court finds that there was probable cause based on the facts of the case to arrest Plaintiff for obstruction. Because there was probable cause to arrest Plaintiff for obstruction, Plaintiff's claim for malicious prosecution cannot stand.

IV.  **CONCLUSION**

For the reasons stated above, Plaintiff's claims fail as a matter of law. Defendants are awarded summary judgment on Count Two based on the statute of limitations. Defendants are awarded summary judgment on Counts One and

Three by virtue of the fact that there was probable cause to arrest Plaintiff, and probable cause is an absolute defense to a malicious prosecution claim. Therefore, Defendants' Motion for Summary Judgment is granted.

**SO ORDERED**, this 2nd day of July, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

ebrs